UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MANUEL CARDENAS, | ) | 1:09-cv-00831-AWI-JLT HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATIONS |
| | ) | REGARDING RESPONDENT'S MOTION |
| v. | ) | TO DISMISS (Doc. 11) |
| | ) | |
| | ) | ORDER DIRECTING THAT OBJECTIONS |
| NEIL H. ADLER, | ) | BE FILED WITHIN TWENTY DAYS |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**PROCEDURAL HISTORY**

Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

The instant petition for writ of habeas corpus was filed on May 11, 2009. (Doc. 1). The petition challenges the findings of a 2008 prison disciplinary hearing that Petitioner was guilty of insolence toward a staff member. (Id.). On September 25, 2009, the Court ordered Respondent to file a response. (Doc. 4). On November 23, 2009, Respondent filed the instant motion to dismiss, contending that Petitioner had failed to state a claim upon which habeas relief could be granted pursuant to Fed. R. Civ. Proc. 12(b)(6). (Doc. 11). On December 23, 2009, Petitioner filed his opposition to the motion to dismiss, characterized as a motion to dismiss Respondent's motion to dismiss, contending that Respondent's motion was improper under Rule 12(b)(6). (Doc. 12).

1

On April 27, 2010, the Court issued an order essentially agreeing with Petitioner that it was improper to file what was clearly an Answer to the merits of the petition in the guise of a Rule 12(b)(6) motion to dismiss. (Doc. 13). However, the Court chose to construe the motion to dismiss as an Answer and provided Petitioner with additional time to file a Traverse. (<u>Id</u>.). Petitioner filed his Traverse on May 11, 2010. (Doc. 15). Accordingly, the case has now been fully briefed and is ready for a merits decision.

**DISCUSSION**

A.  <u>Jurisdiction.</u>

Relief by way of a writ of habeas corpus extends to a person in custody under the authority of the United States. <u>See</u> 28 U.S.C. § 2241. While a federal prisoner who wishes to challenge the validity or constitutionality of his conviction must bring a petition for writ of habeas corpus under 28 U.S.C. § 2255, a petitioner challenging the manner, location, or conditions of that sentence's execution must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241. <u>See</u>, e.g., <u>United States v. Giddings</u>, 740 F.2d 770, 772 (9th Cir.1984); <u>Brown v. United States</u>, 610 F.2d 672, 677 (9th Cir. 1990). To receive relief under 28 U.S.C. § 2241, a petitioner in federal custody must show that his sentence is being executed in an illegal, but not necessarily unconstitutional, manner. <u>See</u>, e.g., <u>Clark v. Floyd</u>, 80 F.3d 371, 372, 374 (9th Cir. 1995) (contending time spent in state custody should be credited toward federal custody); <u>United States v. Jalili</u>, 925 F.2d 889, 893-94 (6th Cir. 1991) (asserting petitioner should be housed at a community treatment center); <u>Barden v. Keohane</u>, 921 F.2d 476, 479 (3d Cir. 1991) (arguing Bureau of Prisons erred in determining whether petitioner could receive credit for time spent in state custody); <u>Brown v. United States</u>, 610 F.2d 672, 677 (9th Cir. 1990) (challenging content of inaccurate pre-sentence report used to deny parol).

Petitioner asserts that, as a result of an adverse ruling in the 2008 prison disciplinary proceeding, he suffered violations of his rights as guaranteed by the United States Constitution. Petitioner's claims arise out of a disciplinary hearing conducted on December 18, 2008, after which the Disciplinary Hearing Officer ("DHO") found that Petitioner had committed the prohibited act of Insolence Toward a Staff Member. (Doc. 1, pp. 7-13). Petitioner contends that (1) the charges, findings of guilt, and sanctions were "motivated solely be [sic] an intent to retaliate against prisoner

2

because he have requested several times to be provided with a prescribed medication; and (2) the DHO's finding of guilt was not supported by "some evidence."  (Id., p. 3).  As a result of the hearing, Respondent sanctioned Petitioner with fifteen days of disciplinary segregation.  (Doc. 1, p. 9).

Although there is no evidence in the record that Petitioner was sanctioned with a loss of credits that would affect the length of his sentence, habeas corpus jurisdiction is available for a prisoner's claims that he has been subjected to greater restrictions of his liberty, such as disciplinary segregation, without due process of law.  Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989). Federal regulations create a liberty interest in not being subjected to disciplinary segregation without due process of law.  Id.; see Hewitt v. Helms, 459 U.S. 460, 466-472 (1983)(holding that a state statutory framework and the punitive nature of segregation created a liberty interest); Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir. 1987)(assuming that habeas petitioner had a protected liberty interest in not being subject to disciplinary segregation).

Moreover, unlike § 2255, § 2241 does not contain language limiting jurisdiction under § 2241 to petitioners who are "claiming the right to be released."  28 U.S.C. § 2255; compare United States v. Thiele, 314 F.3d 399, 401 (9th Cir. 2002)(challenge to restitution order not cognizable under § 2255 because petitioner was not claiming right to be released) with Montano-Figueroa, 162 F.3d at 549 (challenge to timing and amount fine payments cognizable under § 2241's execution clause). Accordingly, § 2241 may be used to challenge the execution of a prisoner's sentence, even where the prisoner does not seek release or to shorten the duration of his confinement.  See, e.g., Rodriguez v. Smith, 541 F.3d 1180, 1182 (9th Cir. 2008); Montez v. McKinna, 208 F.3d 862, 865 (10th Cir. 2000)(entertaining petitioner's challenge to his transfer to a private prison as a challenge to the execution of his sentence pursuant to § 2241); see also Montano-Figueroa v. Crabtree, 162 F.3d 548, 549 (9th Cir. 1998)(reaching the merits of petitioner's § 2241 challenge to the amount and timing of fine payments); United States v. Lemoine, 546 F.3d 1042, 1046 (9th cir. 2008)(entertaining § 2241 challenge to restitution schedule); Giddings, 740 F.2d at 772 ("Review of the execution of a sentence may be had through petition for writ of habeas corpus under 28 U.S.C. § 2241.").

In light of the foregoing, the Court concludes that Petitioner's challenge to the constitutionality of the sanction of disciplinary segregation and his contention that the disciplinary

3

1  charge and proceeding were the produce of retaliation by prison staff are cognizable in these habeas
2  proceedings and that habeas jurisdiction exists for these two claims.  Bostic, 884 F.2d at 1269.
3  Furthermore, because Petitioner is challenging the execution of his sentence at Taft Correctional
4  Institution ("TCI"), and TCI is within the Eastern District of California, Fresno Division, this Court
5  has jurisdiction over the petition.  See Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990).

6        B.  Petitioner's Claims Are Without Merit.

7        Although Petitioner's first claim is for retaliation and his second is based upon the "some
8  evidence" rule, the Court will first address the issue of whether the DHO's decision was supported
9  by some evidence.

10             1.  Sufficiency of the Evidence.

11       Respondent contends that "some evidence" supports the findings of the Disciplinary Hearing
12 Officer.  The Court agrees with Respondent.

13       Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be
14 diminished by the needs and objectives of the institutional environment.  Wolff v. McDonnell, 418
15 U.S. 539, 555, 94 S. Ct. 2963 (1974).  Prison disciplinary proceedings are not part of a criminal
16 prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings.  Id. at 556.
17 Thus, a prisoner's due process rights are moderated by the "legitimate institutional needs" of a
18 prison.  Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989), *citing* Superintendent, etc. v. Hill,
19 472 U.S. 445, 454-455, 105 S. Ct. 2768 (1984).

20       When a prison disciplinary proceeding may result in the loss of good time credits, due
21 process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the
22 disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional
23 goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement
24 by the fact-finder of the evidence relied on and the reasons for the disciplinary action.  Hill, 472 U.S.
25 at 454; Wolff, 418 U.S. at 563-567.

26       In addition, due process requires that the decision be supported by "some evidence."  Hill,
27 472 U.S. at 455, *citing* United States ex rel. Vatauer v. Commissioner of Immigration, 273 U.S. 103,
28 106 (1927).  In Hill, the United States Supreme Court explained that this standard is met if "there

was some evidence from which the conclusion of the administrative tribunal could be deduced . . ." Hill, 472 U.S. at 455, *quoting* United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S. 103, 106, 47 S.Ct. 302 (1927). "Ascertaining whether this standard is satisfied does not require an examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Hill, 472 U.S. at 456. Instead, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-456. The Court justified this lesser standard as follows:

> We decline to adopt a more stringent evidentiary standard as a constitutional requirement. Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require the courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.

Id. at 456. (Citations omitted.)

"The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." Hill at 457. Even where, as in Hill, the evidence in the case "might be characterized as meager," if "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary," those findings must be upheld. Id. Thus, if the procedures listed above are afforded to an inmate, and "some evidence" supports the hearing officer's decision, the requirements of due process are satisfied. Hill, 472 U.S. at 455; Bostric v. Carlson, 884 F.2d 1267, 1269-1270 (9th Cir. 1989).

The evidence presented at the disciplinary hearing and relied upon by the hearing officer included that statement contained in the original incident report filed by Jessica Boydston on November 12, 2008. (Doc. 11, Ex. A). That statement stated, in pertinent part, that Petitioner came to Ms. Boydston, who was working in the medical dispensing area, wanting some kind of cream. Ms. Boydston continues, "I . . . gave him his cream. He looked at the cream, threw it at the window, and yelled 'I don't want this!'"

On November 17, 2008, Petitioner received Incident Report #1799618, for a violation of Code 312, Insolence Toward a Staff Member. (Doc. 11, Ex. B). Prohibited Act Code section 312,

5

set forth in 28 C.F.R. § 541.13, is referred to as "Insolence toward a staff member," and denominated as a "moderate offense."  However, no further explanation of the charge itself appears in § 541.13.

On November 12, 2008, Petitioner was provided a copy of the incident report. (Doc. 11, Ex. B). On November 17, 2008, Petitioner was advised of his rights and signed the advisement of rights acknowledging the same. (Id.). Petitioner chose to waive his rights. (Id.).

On December 18, 2008, the disciplinary hearing was held before DHO Logan. (Doc. 11, Ex. B). Petitioner appeared at the hearing and denied the charge, stating, "It's all a lie. She's the one that offended me." (Id.). Petitioner requested no witnesses at the hearing, and none testified. (Id.). On January 5, 2009, the DHO issued his written decision, which was served on Petitioner on January 12, 2009. (Id.) After reviewing all of the evidence, the DHO found Petitioner guilty of committing the prohibited act. The finding was based on the information submitted by the reporting employee, Ms. Boydston, and on Petitioner's own statement. (Id.).

The DHO summarized the evidence as follows:

> First is the incident report written by J. Boydston which states that on 11-12-2008 at approximately 0930 hours, during KOP, you arrived at the pharmacy window wanting cream. She gave you your cream. You looked at the cream and threw it at the window and yelled, "I don't want this!"
>
> Second, you appears at the DHO hearing and denied the charges. You stated, "It's all a lie. She's the one that offended me."
>
> The DHO has deemed your denials less than credible. You admitted at the UDC hearing that you had attempted to get the cream on five different occasions. It is clear that you were upset and frustrated. In addition, there is no reason for Ms. Boydston to lie. She has nothing to gain.
>
> Therefore, having considered all relevant evidence, the DHO finds the greater weight of the evidence supports the finding that you did commit the prohibited act(s) of Insolence Towards a Staff Member, code 312.

(Doc. 11, Ex. B). As a result of the findings, the DHO assessed sanctions of 15 days disciplinary segregation. (Id.). The DHO explained the reasons for the sanctions as follows:

> "You were sanctioned to act as a deterrent to commit another rule violation and as punishment. Insolence directly defies the authority of staff members. This type of behavior can lead other inmates to believe it is acceptable, thereby creating an unsafe environment for staff and inmates."

(Id.).

For all of the reasons contained in the DHO's report, the Court finds that "some evidence"

6

exists to support a finding that Petitioner had committed the prohibited act of insolence toward a staff member. Although Petitioner adamantly denies the charge, the DHO's decision essentially turned on whether he believed the complaining witness, Ms. Boydston, or Petitioner. The DHO found Petitioner lacked credibility, and thus accepted Ms. Boydston's version of the facts. The DHO reasoned that "there is no reason for Ms. Boydston to lie. She has nothing to gain." (Doc. 11, Ex. B). Under such circumstances, the "some evidence" standard has been met. See Hill, 472 U.S. at 455. While the evidence cannot be characterized as overwhelming, the DHO's determination "was not so lacking in evidentiary support as to violate due process." Hill, 472 U.S. at 457. The fact that evidence of Petitioner's innocence, which was limited to Petitioner's own protestations of innocence, was also in the record does not alter the conclusion that the DHO's decision was supported by "some evidence."

        2.  <u>Retaliation</u>.

Respondent's also contends that Petitioner has failed to establish the required elements of a due process violation based on retaliation by prison employees. Again the Court agrees.

The standard for a constitutional claim of retaliation by prison authorities is clearly set forth by the Ninth Circuit in <u>Rhodes v. Robinson</u>, 408 F.3d 559 (9th Cir. 2005):

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

<u>Id</u>. at 567-568.

Here, Petitioner has failed to properly plead facts sufficient to articulate a claim for retaliation, and, even assume he had, he has failed to present sufficient evidence on the merits of his claim to prevail. First, as Respondent correctly observes, Petitioner has presented only the most generalized facts regarding the alleged retaliation:

> Here, petitioner complains of loss of privileges and placement in solitary confinement by finding him guilty on the false disciplinary charges on violation of his due process of law. Specifically, petitioner submits that he have suffered severe deprivations based on the abuse at the hands of prison authorities and that officials were motivated solely be [sic] an intent to retaliate against prisoner because he have requested several times to be provided with a prescribed medication.

7

(Doc. 1, p. 3).

Petitioner goes on to argue that because an officer was always present when medication was being dispensed, because communication between the inmate and the dispenser was hampered by the small opening in the wall separating the inmates from the dispenser, and because of the close proximity of the inmate to the wall, it would have been impossible for an inmate such as Petitioner to throw the cream against the wall without first being stopped by the attending officer.  (Doc. 1, p. 4). It appears that Petitioner is arguing that in order to throw the cream against the wall as charged in the incident report, he would have had to have been standing farther away from the dispenser than in fact he was.  Based on that precarious reasoning, Petitioner concludes that Ms. Boydston's charges were false and that she and the DHO had retaliated against Petitioner by initiating and conducting the disciplinary hearing.

However, Petitioner has failed to allege what "protected conduct" was implicated by the alleged retaliation or in what way Petitioner's First Amendment rights were "chilled" by the alleged retaliation.   Petitioner does not allege, for example, that the retaliation was in response to Petitioner's repeated requests for specific medications, which would be a protected First Amendment right.  Indeed, Petitioner provides no explanation for why prison employees would have engaged in retaliation in the first instance.  Nor, as mentioned, does Petitioner explain how or in what manner his First Amendment rights have been chilled.  Without such specifically pleaded facts, the claim fails as a matter of law.   Fed. R. Civ. Proc. 12(b)(6).

Moreover, the "evidence" offered in the petition was not presented at the disciplinary hearing.  To the contrary, the only evidence offered by Petitioner at the hearing was his own self-serving and uncorroborated claim that, "It's all a lie.  She's the one that offended me."  Even considering the "facts" alleged in the petition, such "evidence" falls far short of establishing that the prison authorities engaged in retaliation by initiating and conducting the disciplinary hearing.

Moreover, as Respondent correctly notes, Petitioner has also failed to show that his placement in disciplinary segregation did not advance a legitimate correctional goal, as required by Rhodes.  Indeed, the DHO expressly indicated in his findings that the disciplinary segregation placement was authorized as "a deterrent to commit another rule violation and as punishment."

8

(Doc. 11, Ex. B). The DHO also stated that, because the type of behavior Petitioner engaged in could "lead other inmates to believe it is acceptable, thereby creating an unsafe environment for staff and inmates," the sanctions were justified. (Id.). Deterring inmates from committing rules violations, punishing inmates for committing rules violations, and avoiding the creation of an unsafe environment for staff and inmates are all legitimate correctional goals. Therefore, in addition to the other deficiencies in this claim, Petitioner has failed to meet the final prong of the Rhodes test.

In sum, Petitioner's retaliation contention fails both procedurally, as a matter of pleading a sufficient claim, and substantively, in terms of supporting facts and evidence. This is especially true when the claim is viewed as a due process claim.[1] Based on the foregoing discussion, the Court concludes that Petitioner was afforded a hearing with full procedural protections, a decision supported by "some evidence," as well as a written explanation for the sanctions imposed. See Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563-567; 28 C.F.R. § 541.13, Code 312. Accordingly, the Court finds no constitutional or statutory infirmity in the disciplinary proceeding at issue in this case.

## RECOMMENDATION

Accordingly, the Court HEREBY RECOMMENDS that Respondent's motion to dismiss, heretofore construed as an Answer on the merits of the petition (Doc. 11), be GRANTED and the habeas corpus petition be DENIED with prejudice.

This Findings and Recommendation is submitted to the United States District Court Judge

---

[1] In Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293 (1995), the U.S. Supreme Court determined that the Due Process Clause afforded a prisoner no protected liberty interest where the prisoner claimed prison officials wrongly sentenced him to thirty days segregation in a holding cell. Id. However, the Court went on to note that "prisoners retain other protection from arbitrary state action even within the expected conditions of confinement." Id. The Court noted that the First and Eighth Amendments, as well as the Equal protection Clause of the Fourteenth Amendment and "internal prison grievance procedures and state judicial review" may support a retaliation claim. Id. Since Sandin, the Ninth Circuit has reaffirmed that prisoners may still base retaliation claims on harms that would not raise due process concerns. In Pratt v. Rowland, 65 F.3d 802 (9th Cir. 1995), a prisoner successfully raised a "double-celling" retaliation claim, even though the prisoner had no constitutional right to a single-inmate cell. Id. at 807. ("It would be illegal for [prison] officials to transfer and double-cell [petitioner] solely in retaliation for his exercise of protected First Amendment rights."). Similarly, in Hines v. Gomez, 108 F.3d 265 (9th Cir. 1997), the Ninth Circuit found that Petitioner had presented sufficient evidence of a retaliation claim where he had argued that the prison guard had filed a false violation report and the DHO had falsely convicted him in retaliation for prior grievances the prisoner had filed. The Court reasoned that the harm suffered by petitioner was not the sanctions imposed by the disciplinary process, i.e., additional confinement and loss of television privileges, but "the chilling effect on [petitioner's] First Amendment rights." Id. at 269. Here, Petitioner expressly alleges that the purported retaliation by prison employees amounted to a violation of his due process rights. (Doc. 1, p. 3). Accordingly, the Court evaluates Petitioner's retaliation allegation as a due process claim rather than merely as a claim that the retaliation itself was illegal without actually causing a constitutional harm. See Pratt, 65 F.3d at 807.

1  assigned to this case, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of
2  the Local Rules of Practice for the United States District Court, Eastern District of California.
3  Within twenty (20) days after being served with a copy, any party may file written objections with
4  the court and serve a copy on all parties.  Such a document should be captioned "Objections to
5  Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and
6  filed within ten (10) court days (plus three days if served by mail) after service of the objections.
7  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The
8  parties are advised that failure to file objections within the specified time may waive the right to
9  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

11  IT IS SO ORDERED.

12  Dated:   **May 28, 2010**                                    /s/ Jennifer L. Thurston
                                                              UNITED STATES MAGISTRATE JUDGE